OIL & GAS FUTURES, INC. OF TEXAS, Plaintiff-Appellee,

v.

Cecil D. ANDRUS, Secretary of the Interior, Defendant-Appellant,

Texas Gas Exploration, Defendant.

No. 78–1281

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

Jan. 23, 1980.

James W. Moorman, Carl Strass, Martin Green, U. S. Dept. of Justice, Washington, D. C., for defendant-appellant.

Travis C. Broesche, Houston, Tex., for Texas Gas Exploration.

Jeffery R. Parsons, M. W. Parse, Jr., Houston, Tex., for Oil & Gas Futures, Inc.

Before GOLDBERG, RONEY and TJOFLAT, Circuit Judges.

PER CURIAM.

In this appeal we are asked to determine whether ".82" is the equivalent of "82%." Having successfully completed grammar school, we are able to answer in the affirmative.

This dispute has its origins in a sealed competitive bidding process for an oil and gas lease to develop an offshore tract off the coast of Louisiana. Pursuant to section 8(a) of the Outer Continental Shelf Lands Act, 43 U.S.C.A. § 1337(a) (West 1964), the appellant, the Secretary of the Interior, invited bids for the lease. The notice of sale stipulated that "[a]ll royalty bids must be expressed in a percent to a maximum of five decimal places." *See* 39 Fed.Reg. 31670 (1974). Furthermore, the notice stated that only bids offering a royalty of "12.-50 percent or more" would be considered. *See Id.*

Under a heading entitled "Percent Royalty Bid Expressed to Maximum of 5 Decimals," the appellee, Oil and Gas Futures, Inc. of Texas [Oil and Gas Futures], offered a royalty of "73.45689%" in its bid. A competitor, Texas Gas Exploration Corporation [Texas Gas], presented a royalty expressed as ".82165" in its bid. After examining the materials that Texas Gas submitted with its bid, and taking into account the fact that royalty bids were required to exceed 12.50%, the Secretary construed this latter bid to be an offer of a royalty of 82.165% and awarded the lease to Texas Gas. In the district court below, Oil and Gas Futures successfully argued that the Secretary's construction of Texas Gas' royalty bid was arbitrary and capricious, and an abuse of discretion. Accordingly, Oil and Gas Futures was awarded judgment in its favor. We reverse.

---

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

We find it quite incredible that not only was this suit ever brought, but that the appellee convinced the district court that the Secretary abused his discretion by construing ".82165" to be the equivalent of "82.165%." We are in complete accord with the appellant's characterization of this quibble:

> [B]ooks intended for scholars in and below the eighth grade do deal with just this question. On page 87 of their treatise entitled *Growth in Arithmetic* (Revised Edition, Grade Eight) (World Book Co., Yonkers-On Hudson: 1956), John R. Clark and Rolland R. Smith ask the pertinent question: "Do you know how to change a per cent to a decimal?" Assuming a negative response, the authors set forth certain examples of equivalency:
>
> 6 *per cent* means 6 hundredths; so 6% = .06
>
> 7½ *per cent* means 7½ hundreths;
>     7½% = .07½ or .075
>
> 3¼ *per cent* means 3¼ hundredths;
>     3¼% = .03¼ or .0325

After inviting the students to study these equivalencies carefully, the authors announce this principle:

> To change a per cent to a decimal, omit the per cent sign and move the decimal point two places to the left.

The authors then ask their readers to "Study these examples and see if you can make up a rule for changing decimals to per cents." The examples given are:

> .06 = 6%
> .075 = 7.5% = 7½%
> .0325 = 3.25% = 3¼%
> .125 = 12½% = 12.5%

And then the authors set forth this principle:

> To change a decimal to a per cent, move the decimal point two places to the right, and write the per cent sign after the number.

> And so, with this rule in mind, any eighth grader can tell that .82165 = 82.165% (the decimal has been moved two places to the right, and a per cent sign placed after the number). [footnote omitted].

In view of the appellant's proper use of this higher mathematics and the fact that all bids were required to be in excess of 12.50%, the Secretary's decision cannot in any conceivable way be characterized as arbitrary and capricious or as an abuse of discretion.[1] As a result, the judgment of the district court is reversed with instructions to enter judgment in the appellant's favor.

**REVERSED**

---

1. The appellee relies on *Superior Oil Co. v. Udall*, 133 U.S.App.D.C. 198, 409 F.2d 1115 (D.C.Cir.1969), to support the judgment in its favor. This reliance is entirely misplaced. In *Superior Oil*, Union Oil Co. submitted a bid for an oil and gas lease. This bid was the highest, but it failed to comply with the requirement that a bid, to be valid, be signed. The Secretary accepted the bid, however, by relying on an accompanying transmittal letter which was signed but not submitted with the secrecy guaranteed by sealing. The court held that because Union Oil's bid did not contain a signature as required, the bid was nonresponsive, and that the bid could not be made responsive by the incorporation of extraneous material. Consequently, the Secretary did not have discretion to accept the bid. The factual situation presented by this case is entirely distinguisha-

ble. First, the bid submitted by Texas Gas did contain a percentage because, as our examination of basic arithmetic has demonstrated, ".82165" is simply an alternative expression for 82.165%. The bid was thus responsive. Second, the Secretary did not construe Texas Gas' bid by the use of material not part of the sealed bidding process. Instead in a simple, sensible manner, the Secretary interpreted the figure ".82165" that was contained in the bid.

The district court found that Texas Gas' bid was ambiguous and thus engendered confusion inimical to the efficient use of the sealed bidding process. As our mathematical lecture demonstrates, we find no such great ambiguity and uncertainty so as to render the Secretary's clarifying construction of the bid an abuse of discretion.